**PHILLIPS v. CLYDE S. S. CO. et al.**

**THE CYNTHIA.**

(Circuit Court of Appeals, Fourth Circuit. January 25, 1927.)

No. 2580.

1. **Admiralty** ⊙⇒79—Admiralty court functions as court of equity to reach a just result.

A court of admiralty in all matters within its jurisdiction functions as a court of equity, exercising a broad and liberal construction to the end that a conclusion may be reached which will be just to all the parties.

2. **Shipping** ⊙⇒209(2)—Court should not by narrow construction of limitation of liability statute permit shipowner to relieve himself of liability, and at same time keep portion of collision damages recovered.

Though statute providing for limitation of shipowner's liability should be construed with fairness to give owner full benefit of immunities, this merely requires that limitation shall not be denied on purely technical or insufficient reasons, and not that courts shall by narrow construction permit owner to relieve himself of liability, and at same time keep a portion of collision damages to vessel recovered.

3. **Shipping** ⊙⇒209(2)—Surrender of owner's interest in vessel under limitation of liability includes damages recovered by him for collision.

Damages recovered by owner for partial loss of, or injury to, vessel in collision, must be surrendered by owner to entitle him to limitation of liability.

4. **Shipping** ⊙⇒209(2)—Owner, claiming limitation of liability, held liable for interest on damages recovered by him from date of recovery.

Owner, claiming limitation of liability by surrendering his interest in vessel, was properly required to pay interest on damages recovered by him for partial destruction of vessel from date of such recovery on net sum for which he was thereafter liable.

5. **Shipping** ⊙⇒209(2)—Counsel fees and costs of shipowner claiming limitation of liability should be deducted from damages recovered by him, and which he was required to surrender.

In requiring owner of vessel, claiming limitation of liability for collision damages, to turn over damages for partial destruction of vessel recovered by him, deduction for his counsel fees and costs in collision case should be allowed.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Petition by Vivian Phillips for limitation of liability, as the owner of the steam tug Cynthia, against the Clyde Steamship Company and others. Limitation of liability was granted on certain conditions, and petitioner appeals. Decree modified.

John H. Skeen, of Baltimore, Md. (Emory, Beeuwkes & Skeen, of Baltimore, Md., on the brief), for appellant.

Frank B. Ober and Paul F. Due, both of Baltimore, Md. (Janney, Ober, Slingluff & Williams and Charles C. Wallace, all of Baltimore, Md., on the brief), for appellees.

Before WADDILL and PARKER, Circuit Judges, and WATKINS, District Judge.

WATKINS, District Judge. On June 6, 1923, a collision occurred in Baltimore harbor between the steamship Norfolk of the Clyde Steamship Company and the tug Cynthia, owned by Vivian Phillips, which then had in tow a barge owned by the city of Baltimore. The barge had been fitted for carrying passengers, and was temporarily being substituted for the city ferry in crossing the harbor. In this collision the Norfolk was not damaged; the "Cynthia" was sunk; the city barge was damaged, with loss of life of two of its passengers, and personal injuries to several others. Considerable litigation followed. The result of the controversies included a decree of the district court, in which it was held that both the Cynthia and the Norfolk were at fault in bringing on the collision, and, since the "Norfolk" suffered no damage, that it must pay to the owner of the Cynthia the sum of $3,500, being one-half the actual damage to the tug, and also that it must pay the sum of $244.64, being one-half of the court costs of the suit, a total of $3,744.64. In this case appellant paid for counsel fees the sum of $400, and also paid its half of the court costs, amounting to $244.64, a total of $644.-64. In a suit by Phillips against the mayor and city council of Baltimore to recover so much of the damages sustained by the tug as might not be recovered from the Norfolk, a cross-libel was filed, and a decree was entered in favor of the mayor and city council for the amount of the damages ascertained to have been suffered by the barge. On August 30, 1924, appellant filed his petition for limitation of liability, and in due course filed an approved bond for $800, the appraised value of the Cynthia after it was sunk. In these proceedings were duly filed claims for damages for injuries to certain passengers, and deaths of others, aboard the barge, resulting from the collision. These claims were filed against all three parties, to wit, the Clyde Steamship Company, the mayor and city council of Baltimore, and Vivian Phillips and his tug, the Cynthia. By stipulation these claims were adjusted for an aggregate sum of $12,550, which amount was paid by the Clyde Steamship Company and the city of Baltimore, without prejudice to the rights between the parties against whom the claims were filed, and under a stipulation by all these parties, that the Clyde Steamship Company and the mayor and city council of Baltimore should recover from Phillips proportionately, as set out in the agreement, such sums as he might be held liable for, under the determination of the court, in the limitation of liability proceedings. Limitation of liability was granted appellant, but the district court ordered him as a part of the limitation fund to pay into court the whole amount recovered by him in the collision case against the steamship Norfolk, to wit, the sum of $3,500, with interest thereon amounting at the date of the decree to $322.50, a total of $3,822.50.

The appeal challenges the correctness of the district court's decree in this respect, and this is the only issue submitted to our consideration. The assignments charge error upon the part of the district court, first, in requiring payment of the sum specified above; second, in the allowance of interest; and, third, in not deducting from the amount decreed the sum of $644.64 expended by appellant for counsel fees and costs in the collision case.

[1-3] The first and fundamental issue in the case is whether the surrender of the owner's interest in a vessel, under limitation of liability, includes damages recovered by him against another vessel as the result of a collision. Appellees contend that the point has been decided by the Supreme Court in O'Brien v. Miller, 168 U. S. 287, 18 S. Ct. 140, 42 L. Ed. 469; appellant maintains that it has not. No question is made of the effect of the decision as requiring the surrender of a recovery for damages in case of a total destruction of a vessel. It is urged, however, that, since the vessel was not totally destroyed in this case, but was salvaged with an appraised value, when sunk, of $800, such sum should represent the total liability of the tug and its owner in the limitation of liability proceeding. It must be borne in mind that a court of admiralty in all matters within its jurisdiction functions as a court of equity, exercising a broad and liberal construction to the end that a conclusion may be reached which will be just to all the parties to the cause at issue. O'Brien v. Miller, supra; The Virgin, 8 Pet. 538, 8 L. Ed. 1036; Pope v. Nickerson, 3 Story, 486, Fed. Cas. No. 11274. And it has been held that the duty to surrender pending freight to entitle to a limitation of liability must be liberally construed against a shipowner. The Main v. Williams, 152 U. S. 122, 14 S. Ct. 486, 38 L. Ed. 381;

La Bourgogne, 210 U. S. 95, 28 S. Ct. 664, 52 L. Ed. 973. By a parity of reasoning the same rule must be applied with respect to the words "value of the vessel" and "interest in the vessel," since they are used in the same act and in the same connection as the word "freight." It is true, as pointed out by counsel for appellant, that the statute should be construed in a spirit of fairness with the view of giving shipowners the full benefit of the immunities intended to be secured by it. Providence & New York Steamship Co. v. Hill Manufacturing Co., 109 U. S. 578, 3 S. Ct. 379, 617, 27 L. Ed. 1038. This, however, only requires that the limitation shall not be denied upon purely technical or for insufficient reasons. It in no way suggests that the courts should by a narrow construction permit a shipowner to relieve himself of liability, and at the same time keep back a portion of the price which he had obtained for damages to the vessel. As early as the case of Sheppard v. Taylor, 5 Pet. 675, 8 L. Ed. 269, decided in 1831, Justice Story used the following significant language: "If the ship had been specifically restored, there is no doubt that the seamen might have proceeded against it in the admiralty in a suit, in rem, for the whole compensation due to them. They have by the maritime law an indisputable lien to this extent. This lien is so sacred and indelible, that it has, on more than one occasion, been expressively said, that it adheres to the last plank of the ship. 1 Pet. Adm. note, 186, 195; 2 Dods. 13; The Neptune, 1 Hagg. 227, 239. And, in our opinion, there is no difference between the case of a restitution in specie of the ship itself and a restitution in value. The lien reattaches to the thing and to whatever is substituted for it. This is no peculiar principle of the admiralty. It is found incorporated into the doctrines of courts of common law and equity. The owner and the lienholder, whose claims have been wrongfully displaced, may follow the proceeds wherever they can distinctly trace them. In respect, therefore, to the proceeds of the ship, we have no difficulty in affirming that the lien in this case attaches to them."

It is true that this case was decided some time before the passage of the Limitation of Liability Act of 1851, but the doctrine quoted was afterward specifically referred to and approved by the court in O'Brien v. Miller, supra, decided in 1897. In that case, after reviewing the provisions of the original act of March 3, 1851, 9 Statutes 635, Revised Statutes, § 4282 et seq. (Comp. St. § 8020 et seq.), it was said: "The clear purpose of Congress was to require the shipowner, in order to be able to claim the benefit of the limited liability act, to surrender to the creditors of the ship all rights of action which were directly representative of the ship and freight. Where a vessel has been wrongfully taken from the custody of her owners or destroyed through the fault of another, there exists in the owner a right to require the restoration of his property, either in specie or by a money payment as compensation for a failure to restore the property. Manifestly, if the option was afforded the owner of the ship to receive back his property or its value, he could not, by electing to take its value, refuse to surrender the amount as a condition to obtaining the benefit of the act." See, also, Hughes on Admiralty (2d Ed.) p. 369; 1 Benedict on Admiralty (5th Ed.) p. 605

In the case of City of Norwich, 118 U. S. 468, 6 S. Ct. 1150, 30 L. Ed. 134, and its companion cases, The Scotland, 118 U. S. 507, 6 S. Ct. 1174, 30 L. Ed. 153, and The Great Western, 118 U. S. 520, 6 S. Ct. 1172, 30 L. Ed. 156, it was held that insurance is no part of the owner's interest in the ship or freight, within the meaning of the law, and does not enter into the amount for which the owner is liable in limitation of liability proceedings. One of the justices being ill at the time, it appears that the court was then equally divided upon the question. The decision, however, was affirmed by a unanimous court in the subsequent case of Craig v. Continental Insurance Co., 141 U. S. 638, 12 S. Ct. 97, 35 L. Ed. 886, and the rule is now unquestioned. The decision of the court, however, was based upon the well-recognized rule that the contract of insurance does not attach itself to the thing insured or go with it when transferred. As shown by the authorities above cited, however, the rule is otherwise as to claims for damages to a vessel by reason of a collision; these claims inhering in the property itself, and being included in the transfer of interest therein. A careful study of the statute itself fails to disclose a single word or phrase suggestive of the idea that a different rule should apply in a case of partial loss of, or injury to, a vessel from the case of a total destruction. The owner is privileged to limit his liability to the value of the vessel and its freight, and, in order to do so, he must transfer his interest (obviously, his entire interest) in such freight and vessel for the benefit of claimants.

[4] The next issue raised by the appeal is whether interest was properly allowed by the district judge. In allowing a claim of interest in the case of The Scotland, supra, the court said (page 518 [6 S. Ct. 1175]): "The allowance of interest on damages is not an absolute right. Whether it ought or ought

not to be allowed depends upon the circumstances of each case, and rests very much in the discretion of the tribunal which has to pass upon the subject, whether it be a court· or a jury."

And in the case of The Albert Dumois, 177 U. S. 240, 20 S. Ct. 595, 44 L. Ed. 751, the court held that the allowance of interest in admiralty cases is discretionary, and not reviewable, except in a very clear case. Appellant, immediately upon obtaining the sum awarded him in the collision case, was in possession of a fund which he should then have transferred as a part of his interest in the tug, and the court very properly required him to pay interest from that date. The amount, however, should be calculated from that date upon the net sum for which he is hereinafter held liable, and the decree modified accordingly.

[5] We are unable to agree with the learned judge who tried this case in failing to allow a deduction from the judgment rendered of the amount paid by appellant for counsel fees and costs in the collision case. While it is true that he wrongfully withheld the amount recovered for damages to his vessel, the primary question is, What amount he should have paid over as and when the fund was received? The fund has been recovered, as we have determined, for the benefit of the claimants against the vessel. It conclusively appears that, in order to recover, the appellant was compelled to expend the sum of $400 for counsel fees and $244.64 costs. The fund thus recovered, under the terms of the decree in the limitation of liability case, inures in no way to the benefit of appellant. Equity requires, therefore, that he be reimbursed for the expenses incurred in the recovery. The decree appealed from must therefore be modified by deducting from $3,500 the sum of $644.64, leaving a net amount of $2,855.36, which sum, with interest from the date of its receipt, should be included in the decree in lieu of the $3,822.50 therein provided for.

Modified.