**UNITED STATES of America**

v.

**M/V PITCAIRN, her engines, tackle, etc., and BARGE SOC–100, her engines, tackle, etc., in rem.**

**No. 7211.**

United States District Court
E. D. Louisiana,
New Orleans Division.

April 10, 1967.

Louis C. LaCour, U. S. Atty., Ernest N. Morial, Asst. U. S. Atty., New Orleans, La., Bertram E. Snyder, Admiralty and Shipping Section, Dept. of Justice, Washington, D. C., for plaintiff.

Nathan Greenberg, Gilbert P. Cohen, Gretna, La., for defendant.

HEEBE, District Judge:

This matter reaches us as a result of the alleged collision on March 1, 1962, of the tug M/V PITCAIRN and its tow, the barge S.O.C. 100, with the Houston Ship Channel Light No. 59. The United States libeled the vessels on March 26, 1965, seeking recovery of the cost of repairs to the light and the statutory penalty, 33 U.S.C.A. § 412. The PITCAIRN was

seized on March 30, 1966, at 9:55 a. m. and was released on April 1, 1966, at 4:56 p. m., some fifty-five hours later, upon the posting of a bond by claimant Jack Nielson. On May 11, 1966, the claimant filed an answer to the libel and a cross libel seeking damages for the alleged wrongful seizure of the vessel.

The United States moved to strike the cross libel for the reason that it did not, as required in admiralty,[1] arise out of the same cause of action as the libel, and the further reason that a copy of the cross libel was not sent by registered mail to the Attorney General, relying on § 742 of Title 46, U.S.C.A., which, after waiving the sovereign immunity of the United States with regard to suits in admiralty, further provides that

"The libelant shall forthwith serve a copy of his libel on the United States attorney for such district and mail a copy thereof by registered mail to the Attorney General of the United States, and shall file a sworn return of such service and mailing. * * *

"In case the United States * * * shall file a libel in rem or in personam in any district, a cross libel in personam may be filed or a set-off claimed against the United States * * *, with the same force and effect as if the libel had been filed by a private party."

At the hearing of the motion the United States abandoned its argument that a cross libel *must* arise out of the same cause of action as the libel because the sweeping amendments to the Federal Rules effective July 1, 1966, merging civil and admiralty practice, apparently now permit permissive counterclaims in admiralty as well as civil matters—admiralty doctrine and Admiralty Rule 50 and the cases thereunder are replaced by Rule 13(b), F.R.Civ.P. However, the United States still insisted that since

---

1. *United States v. Isthmian Steamship Co.*, 359 U.S. 314, 79 S.Ct. 857, 3 L.Ed.2d 845 (1959), and lower court cases and historical procedure cited therein. In that case, the Court confirmed the requirement in the face of argument by the United States

that the requirement was anachronistic and that the Court should adopt a more flexible procedure; the Court commented that "if the law is to change it should be by rulemaking or legislation and not by decision."

the cross libel did not indeed arise out of the same cause of action as the libel, then, under the law prior to the July 1, 1966, amendments, it could not have been validly filed and in legal contemplation did not exist, and thus, completing the argument, since it was not a cross libel known to the law at the time § 742 was passed and later amended, the provisions of § 742 governing libels, rather than the provisions applicable to cross libels, should be controlling. That conclusion is based on the premise that since a cross libel would always arise out of the same cause of action as the libel, Congress saw no need for registered mailing of cross libels to the Attorney General because he would already have knowledge of all the facts and circumstances concerning the cross libel, in that he had filed his libel upon the same cause of action; but since cross libels can now arise out of causes of action different from the libel, there should be read into the statute a requirement that all such cross libels be governed as to the mailing requirement by the rules governing libels, assuring that the Attorney General is immediately informed of all causes of action of which he is not yet concerned as a litigant.

Answering this argument, the vessel owner asserts that the cross libel did arise out of the same cause of action as the libel within the contemplation of the former admiralty practice; or, that even if it did not so arise, the statute should be read as exempting all cross libels from the registered mailing requirement, the rationale behind the statute being that such is not required whenever the United States is already a party to a suit, the introduction of a new cause of action being irrelevant.

Preliminary to reaching the statutory interpretation issue, we must determine whether the cross libel here asserted arises from the same cause of action as the libel for, if so, there would be no argument against its being within the contemplation of § 742 and registered mailing would not be required. Although we cannot find and have not been cited any cases dealing with the precise problem herein, a cross libel based on the alleged wrongful judicial seizure made as a result of the filing of the libel,[2] we are of the opinion that the cross libel filed in this matter cannot be considered to arise from the same cause of action as the libel. It is certainly true that the cross libel is ultimately traceable to the alleged collision in the Houston Ship Channel, but the time and space traversed in so tracing its derivations are great— the claim alleged in the cross libel did not exist in any manner until the seizure occurred over four years later than, and some 300 miles distant from, the collision alleged in the libel. The facts of Brown v. Universal Marine Company, 317 F.2d 279 (6th Cir. 1963), seem to us to indicate a cross libel much more intimately bound up with the libel than that indicated by the facts before us, but even there the cross libel was held not to arise from the same cause of action as the libel. There, the owner of a marina libeled a tug which allegedly negligently created a wave wash and suction which damaged the marina. However, prior to pursuing his judicial remedy, the marina owner allegedly approached the tug in another vessel and, as a result of the persuasive power of a shotgun, boarded her and forced her to shut down her engines and halt her navigation. The tug owner therefore filed a cross libel for delay to navigation and armed trespass. Even though it appears that the wave wash and subsequent boarding could be considered all part of one general transaction, the district court dismissed the cross libel and was affirmed by the Sixth Circuit.

2. The vessel-owner herein points out that in Portland Shipping Co. v. The Alex Gibson, 44 F. 371 (D.Wash.1890), and The Amiral Cecille, 134 F. 673 (D.Wash. 1905), cross libels of this nature were disallowed on the merits, and not on the basis that they did not arise from the same cause of action as the libels. However, it does not appear from those opinions that the procedural question was raised or considered, and we find those cases unpersuasive.

■ We are not unmindful that the validity of the claim asserted in the cross libel filed here will depend to some extent, insofar as it must demonstrate that the seizure by the United States was so unwarrantably brought with so little color or foundation as to imply malice or gross negligence,[3] on the proof adduced upon trial of the libel. However, it will also turn upon the investigative work and prosecutorial decisions of the United States in the four years following the alleged collision. The decisive factor in our mind is the remoteness in time and space of the arising of the claim alleged in the cross libel from the original occurrence. Therefore, we must hold that the cross libel asserted herein would not have been permitted prior to July 1, 1966.

■ We thus reach the issue concerning the interpretation of § 742.[4] First, it should be pointed out that more than mere formality is involved. The requirement of registered mailing to the Attorney General is not merely a formal requirement, Schnell v. United States, 166 F.2d 479, 483 (2nd Cir. 1948) cert. den. 334 U.S. 833, 68 S.Ct. 1346, 92 L.Ed. 1760 (1948) to be ignored where no prejudice is shown, City of New York v. McAllister Bros., Inc., 177 F.Supp. 679, 682 (S.D.N.Y.1959), affirmed 278 F.2d 708 (2nd Cir. 1960), and in fact has been enforced where suit was filed within the limitation period but the registered mailing was made after the period had run, with the eventual result that the right of action was permanently foreclosed, Battaglia v. United States, 303 F.2d 683 (2nd Cir. 1962), cert. dism. 371 U.S. 907, 83 S.Ct. 210, 9 L.Ed.2d 168 (1962). And in the matter before us, it might appear that the cross libel is so connected with the libel as to make absolutely unnecessary any additional notice to the Attorney General. However, we have held, supra, that the cross libel herein does not arise from the same cause of action as the libel, and we must thus apply a rule generally applicable to all cross libels arising out of different causes of action than the libel, even though one may be somewhat more related to the libel than another. We proceed then as though the cross libel herein were totally unrelated to the libel.

■ By its terms, § 742 does not require registered mailing of cross libels to the Attorney General. However, the amendments to the Federal Rules have expanded the scope of permissible cross libels, now called counterclaims, far beyond that which was known at the time § 742 was passed or most recently amended. We are in agreement with the holding in Gianella v. Keels, 261 F.Supp. 662 (S.D.Fla.1966), expanding the coverage of a statute beyond its literal meaning to problems which, although they, are in a legal posture denominated differently than those the statute literally purports to cover, are essentially indistinguishable from the problems the statute was designed to cover. Before us, however, is not the *Gianella* type of problem, wherein names differed but concepts were similar; rather, here the name is the same but the concepts embodied in the name have changed drastically. Ordinarily, we might have little hesitancy in holding that the coverage of a statute expands as the subjects it literally purports to govern develop and expand, and the plain language of the

---

3. Portland Shipping Co. v. The Alex Gibson, supra n. 2, 44 F. at 374; Artinano v. W. R. Grace & Co., 286 F. 702 (E.D.Va. 1923) and cases cited therein.

4. We have considered the counterclaim filed herein as having been asserted under the Suits in Admiralty Act, 46 U.S.C.A. § 742. The Public Vessels Act, 46 U.S.C.A. § 783, also has provisions covering cross libels against the United States. That statute affirmatively requires that cross libels filed thereunder arise out of the same subject matter or cause of action as the libel; whereas that requirement was formerly read into § 742 because it was the prevailing admiralty doctrine, supra, n. 1 and text accompanying, and since the prevailing admiralty doctrine was abrogated by the merger of civil and admiralty practice, supra, ¶ 3 of this opinion, the requirement can be read out of § 742, but Rule 13(d), F.R.Civ.P., prevents its being read out of § 783.

statute would be decisive. But here, the statute sets conditions on the waiver of sovereign immunity by the United States, and, as is true for all such statutes, the provisions are jurisdictional and must be strictly construed in favor of the United States.[5] The statute imposes less burdensome conditions on the waiver of immunity for cross libels than it does for original libels. It is clear that within the literal meaning of the statute, the claim before us is a cross libel, but we must hesitate to extend the waiver of sovereign immunity, by extending the scope of the less burdensome conditions to this new creature of the law, based on literal meanings alone. Rather, we believe that the effect of § 742 on the claim before us should be determined by classification of the claim according to the legal concepts in existence at the time that statute was enacted, if the rationale of the statute was based on these concepts.

■■■ The legislative history of § 742 is silent as to whether the less burdensome conditions were imposed on cross libels because the Attorney General was already a formal party to the *suit*, or because he was already a formal party to the *cause of action* and would thus be aware of all the facts and circumstances concerning the cross libel, or whether both factors played a part.[6] Both factors would have been present in every case. Ordinarily, we might be forced to make a choice as to the rationale of the statute and as to the intent of its framers. However, we prefer here not to make that choice, which, in the final analysis, would be mere speculation in that this problem could not have arisen under the law as it stood at that time and undoubtedly was not at all considered by the framers of the statute. Rather, we simply prefer not to render a decision which would have the effect of extending a waiver of sovereign immunity in the absence of a clear and convincing legal basis for that extension or in the presence of a reasonable argument against the extension. Here, the United States points out that even though civil and admiralty practice has been merged, some of the problems inherent in admiralty matters remain, notably the mobility of vessels and their personnel, and thus it is essential that the Attorney General be informed immediately of all

5. Eastern Transportation Co. v. United States, 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472 (1927); Schillinger v. United States, 155 U.S. 163, 166, 15 S.Ct. 85, 39 L.Ed. 108 (1894); United States v. Clyde-Mallory Lines, 127 F.2d 569, 571 (5th Cir. 1942), affirmed 317 U.S. 395, 63 S.Ct. 294, 87 L.Ed. 355 (1943); Hudson Trading Co. v. United States, 28 F.2d 744, 746 (3rd Cir. 1928); Mejia v. United States, 57 F.Supp. 1015 (E.D.La. 1944), affirmed 152 F.2d 686 (5th Cir. 1945), cert. den. 328 U.S. 862, 66 S.Ct. 1366, 90 L.Ed. 1632 (1946).

6. "Hearing Before the House Committee on the Judiciary on H.R. 7124, Authorizing Suits Against the United States in Admiralty," 66th Cong., 1st Sess., ser. 4 (1919); "Hearing Before the Senate Committee on Commerce on S. 2253, Suits in Admiralty Against the United States," 66th Cong., 1st Sess. (1919); 58 Cong. Rec. 7317–18, 7439–40 (1919); Hearing Before the House Committee on the Judiciary on the Attorney-General's Substitute for S. 3076 and H.R. 7124, Fixing the Status of Government Owned or Operated Vessels, and Providing Relief for Maritime Torts; 59 Cong.Rec. 1678–80, 1685–88, 1693, 1751–58, 3629–31 (1920). Although this is not a cross libel filed pursuant to the Public Vessels Act, see n. 4 supra, it may be assumed that the legislative history of that Act would be relevant and helpful, in that libels under that Act are governed by the strict requirements of the Suits in Admiralty Act, by virtue of the last sentence of § 782, whereas cross libels are again not subject to those requirements. However, the legislative history of that Act is also silent. "Hearings Before the House Committee on the Judiciary on H.R. 13591, Actions for Collisions Caused by Vessels Belonging to the United States," 66th Cong., 2d Sess., ser. 24 (1921); H.R.Rep. #1301, 66th Cong., 2d Sess. (1921); "Hearing Before the House Committee on the Judiciary on H.R. 9075, Amending the Act Authorizing Suits Against the United States in Admiralty," 68th Cong., 1st Sess., ser. 43 (1924); H.R.Rep. #913, 68th Cong., 1st Sess. (1924); S.R. #941, 68th Cong., 2d Sess. (1925); 66 Cong. Rec. 2086–89, 3560, 4309–10 (1925).

admiralty claims, whether in the form of complaints or counterclaims, that do not arise from causes of action which he has previously sued upon and of which he is fully cognizant. This argument is eminently sound and reasonable, and thus we will not enlarge the effect of this statute's waiver of sovereign immunity. Therefore, we hold that admiralty counterclaims which do not arise out of the same cause of action as the complaint must comply with the service and mailing requirements § 742 places on libels. Accordingly, it is ordered that the counterclaim filed herein be dismissed, without prejudice to the right of the defendant to file a similar counterclaim in compliance with the statutory requirements.